IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No. 19-21007-Civ-COOKE-GOODMAN

JJ Entertainment World, Inc.,
     a Florida corporation,

     Plaintiff,

v.
                                              <u>JURY TRIAL DEMANDED</u>

VRsenal, Inc., a Delaware corporation,
Ben Davenport, Kirk Smith, and Gabe Halsmer,

     Defendants.

---

**DEFENDANTS' ANSWER, DEFENSES, COUNTERCLAIMS AND DEMAND FOR ARBITRATION IN RESPONSE TO PLAINTIFF'S AMENDED COMPLAINT**

Defendants, VRsenal, Inc., Ben Davenport, Kirk Smith and Gabe Halsmer ("Defendants") hereby respectfully submit their answer, defenses, counterclaims and demand for arbitration in response to the Amended Complaint filed by Plaintiff JJ Entertainment World, Inc. ("Plaintiff").

**I. JURISDICTION AND VENUE**

<u>COMPLAINT:</u>

1. This Court has subject-matter jurisdiction over this action because the matter in controversy exceeds $75,000 (exclusive of interest and costs) and is between a plaintiff who is a citizen of Florida and defendants who are all residents and citizens of a state other than Florida. *See* 26 U.S.C. § 1332.

<u>ANSWER:</u>

Denied.

1

COMPLAINT:

    2.   This Court has personal jurisdiction over defendants because, in the contract at issue, defendants agreed to submit to the jurisdiction of any court located in Miami, Florida, and all of the relevant facts took place in South Florida.

    ANSWER:

    Denied.

COMPLAINT:

    3.   Venue is also proper in this judicial district because the contract at issue provides that any legal action against Defendants may be brought in any federal or state court in Miami, Florida, and the breach of duty took place in South Florida.

    ANSWER:

    Denied.

## II. THE PARTIES

COMPLAINT:

    4.   Plaintiff JJ Entertainment World is a Florida corporation with its principal place of business in Miami, Florida.

    ANSWER:

    Admitted.

COMPLAINT:

    5.   Defendant VRsenal is a Delaware corporation with its principal place of business in Fort Collins, Colorado. VRsenal is a company that creates virtual reality games.

    ANSWER:

    Admitted.

COMPLAINT:

    6.  Upon information and belief, Defendant Davenport is a citizen of Colorado or a state other than Florida. Davenport is the Chief Executive Officer of VRsenal.

    ANSWER:

    Admitted.

COMPLAINT:

    7.  Upon information and belief, Defendant Smith is a citizen of Colorado or a state other than Florida. Smith is the Chief Financial Officer and Chief Operating Office of VRsenal.

    ANSWER:

    Admitted.

COMPLAINT:

    8.  Upon information and belief, Defendant Halsmer is a citizen of Colorado or a state other than Florida. Halsmer is the Chief Technology Officer of VRsenal.

    ANSWER:

    Admitted.

### III. FACTUAL BACKGROUND

**A.**    **The Parties' Relationship**

COMPLAINT:

    9.  In 2018, JJ Entertainment World was elicited [sic] to become an investor in VRsenal; consequently, the parties engaged in negotiations and discussions to that effect.

    ANSWER:

    Denied.

COMPLAINT:

10. During the parties' negotiations, JJ Entertainment World agreed to lend VRsenal $1,150,000 for its operations and on September 18, 2018, the parties entered into a Promissory Note for repayment of the loaned monies. *See* Exhibit A.

ANSWER:

Admitted only that Exhibit A was signed after being fraudulently induced by Plaintiff. Denied that Exhibit A is the complete or final expression or embodiment of the parties' agreements and transactions. Otherwise, denied.

COMPLAINT:

11. The Promissory Note was signed by Juan Jose Rendon, on behalf of JJ Entertainment World; by Smith, on behalf of VRsenal; and by Davenport, Smith, and Halsmer, each individually.

ANSWER:

Admitted only that Exhibit A was signed after being fraudulently induced by Plaintiff. Denied that Exhibit A is the complete or final expression or embodiment of the parties' agreements and transactions. Otherwise, denied.

B.   Terms of the Promissory Note

COMPLAINT:

12. Under the terms of the Promissory Note, Defendants "promised to pay to the order of JJ Entertainment World . . . the principal sum of $1,150,000.00, together with interest thereon" in specific installments as follows:
   a.  Interest payment of $8,625.00 due on December 18, 2018
   b.  Interest payment of $8,625.00 due on January 18, 2019
   c.  Interest payment of $8,625.00 due on February 18, 2019
   d.  Interest payment of $8,625.00 and entire remaining unpaid principal balance due on March 18, 2019
   Ex. A.

ANSWER:

Admitted only that Exhibit A was signed after being fraudulently induced by Plaintiff. Denied that Exhibit A is the complete or final expression or embodiment of the parties' agreements and transactions. Otherwise, denied.

4

COMPLAINT:

13. The Promissory Note also provides for a 5% late charge for any payment not received by JJ Entertainment World within ten (10) days of its due date. Ex. A.

ANSWER:

Admitted only that Exhibit A was signed after being fraudulently induced by Plaintiff. Denied that Exhibit A is the complete or final expression or embodiment of the parties' agreements and transactions. Otherwise, denied.

COMPLAINT:

14. The parties agreed that if any payment due under the Promissory Note is not received within ten (10) days of its due date, the Promissory Note "shall be considered in default" and "the holder of the Note may, at its option, declare all unpaid indebtedness hereby immediately due and payable without notice or demand." Ex. A.

ANSWER:

Admitted only that Exhibit A was signed after being fraudulently induced by Plaintiff. Denied that Exhibit A is the complete or final expression or embodiment of the parties' agreements and transactions. Otherwise, denied.

C. Defendants' Breach of the Promissory Note

COMPLAINT:

15. Defendants have breached the Promissory Note by failing to pay any of the payments due under the Promissory Note. Specifically, Defendants have failed to pay the amounts due on December 18, 2018, January 18, 2019, and February 18, 2019. It has become evident from Defendants' actions that they will also fail to pay the payment due on March 18, 2019.

ANSWER:

Denied.

COMPLAINT:

16. As a result, the Promissory Note is in default and all unpaid sums, including the principal amount of $1,150,000 plus interest and late charges, have become due and payable.

ANSWER:

Denied.

COMPLAINT:

17. Because Defendants have failed to pay any of the sums due and payable, Defendants have breached the Promissory Note and have forced Plaintiff to engage counsel to litigate this action.

ANSWER:

Denied.

COMPLAINT:

18. The damages suffered by Plaintiff as a result of Defendants' breach exceed $1,200,000.00.

ANSWER:

Denied.

## IV. CLAIMS FOR RELIEF
## COUNT I – BREACH OF CONTRACT

COMPLAINT:

19. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 18 as if fully set forth herein.

ANSWER:

Defendants incorporate by reference all of their answers to the prior paragraphs to the Amended Complaint. Otherwise, denied.

COMPLAINT:

20. Plaintiff and Defendants entered into a contract, the Promissory Note, in which Defendants agreed to make interest and principal payments to Plaintiff by specific deadlines.

ANSWER:

Admitted only that Exhibit A was signed after being fraudulently induced by Plaintiff. Denied that Exhibit A is the complete or final expression or embodiment of the parties' agreements and transactions. Otherwise, denied.

COMPLAINT:

21. Defendants breached the Contract by failing to pay any of the sums due to Plaintiff under the Promissory Note.

   ANSWER:

   Denied.

COMPLAINT:

22. Plaintiff has paid the documentary stamp tax on the Promissory Note.

   ANSWER:

   Admitted.

COMPLAINT:

23. As a proximate result of Defendants' breach, Plaintiff has suffered—and is entitled to collect from Defendant—damages that are estimated to exceed ONE MILLION TWO HUNDRED THOUSAND DOLLARS ($1,200,000), exclusive of interest and expenses.

   ANSWER:

   Denied.

**V. JURY DEMAND**

COMPLAINT:

24. Plaintiff demands a jury trial.

   ANSWER:

   Admitted.

WHEREFORE, Plaintiff, JJ Entertainment World, Inc., demands judgment against

7

Defendants VRsenal, Inc., Ben Davenport, Kirk Smith, and Gabe Halsmer for all damages arising from Defendants' conduct, plus attorneys' fees, costs, and expenses. Plaintiff also demands such other relief as the Court and/or the Jury deems just and proper.

ANSWER:

Admitted only that Plaintiff seeks the specified relief. Denied that Plaintiff is entitled to the specified relief or any other relief. Otherwise, denied.

## DEFENSES

**1. Mandatory Termination and Conversion.**

Page one (1) of the Promissory Note provides that:

> This Promissory Note **shall be terminated** upon the signing of the Shareholder Agreement…

Page one (1) of the Promissory Note further provides that:

> The funds from this Promissory Note **shall be applied** as part of the $3 million investment by JJ Entertainment World, therefore satisfying VRsenal's obligations of the Promissory Note.

The court having already determined that the September 2018 Promissory Note and the Partners Agreement are separate and distinct contracts and transactions, this language from the Promissory Note is binding and separate and independent of the Partners Agreement and is a complete bar and defense to Plaintiff's claim.

**2. Arbitration**. Because Plaintiff's claim cannot be adjudicated without adjudicating Defendants' claims, defenses, set-offs and recoupments under the Partners Agreement, and the Partners Agreement requires mandatory arbitration, this case is subject to mandatory arbitration and should be stayed pending the outcome of the mandatory arbitration.

**3. <u>Prior Material Breach – the Promissory Note</u>**. Plaintiff committed a prior material breach of the Partners Agreement by not terminating the Promissory Note, not making the additional investment and not converting the loan into a $3 million equity investment.

**4. <u>Prior Material Breach – Partners Agreement</u>**. Plaintiff committed a prior material breach of the related Partners Agreement by not negotiating in good faith over the terms of the Shareholder Agreement and related subsidiary and collateral investment agreements, like voting agreements and investor rights agreements, and by not negotiating in good faith over the parties' disputes. Plaintiff merely had its attorney state that it would not be making the investment, with no explanation or reasoning, after Defendants had agreed to the material terms of Plaintiff's proposed Shareholder Agreement. Upon information and belief, Plaintiff never had the $3 million to invest, nor access to the remaining $2 million, and was misleading and defrauding Defendants throughout the lending, contracting and negotiation process.

**5. <u>Fraud</u>**. Plaintiff did not have the $3 million to invest, nor access to the remaining $2 million, and defrauded and misled Defendants into signing the Promissory Note and the Partners Agreement by falsely pretending to be planning to make and to be able to make a $3 million equity investment and by making false promises, without the intent to perform them and lacking the intent to perform them, that it would and could make the investment, would and could fund the investment, would and could negotiate the investment agreements in good faith, and would and could convert the promissory notes into a $3 million equity investment and thereby terminate them. These misrepresentations and false promises by Plaintiff were made in the Partners Agreement, in the Promissory Notes, and in the parties' negotiations, leading up to and shortly before the execution of the Partners Agreement and each of the three Promissory Notes.

**6. <u>Set-off and Recoupment</u>**. Defendants are entitled to set-off against JJ's claimed damages and to recoup from JJ the $3 million or more in damages that Defendants suffered from JJ failing to negotiate in good faith, failing to make the promised investment, failing to convert the loan made under the September 2018 Promissory Note into part of a $3 million equity investment and failing to terminate the September 2018 Promissory Note and the debt allegedly due thereunder.

**7. <u>Frustration of Purpose and Impossibility</u>.** JJ frustrated the purpose of the Partners Agreement and the Promissory Notes by failing to negotiate in good faith, by failing to convert the debt into equity and by failing to terminate the May 2018 and September 2018 Promissory Notes. JJ knew all along that, absent the promised $3 million equity investment, it would be impossible for Defendants to pay back the loans made under the Promissory Notes.

<u>**JURY DEMAND**</u>

Defendants demand trial by jury.

<u>**COUNTERCLAIMS**</u>

Defendants and Counterclaim Plaintiffs, VRsenal, Inc. ("VRsenal") and Ben Davenport, Kirk Smith and Gabe Halsmer (the "Individual Defendants"), hereby respectfully submit their counterclaims against Plaintiff and Counterclaim Defendant, JJ Entertainment World, Inc. ("JJ").

<u>**PARTIES**</u>

1.      Counterclaim Plaintiff, VRsenal  Inc/, is a Delaware corporation with its principal place of business in Fort Collins, Colorado. VRsenal is a company that creates virtual reality games.

10

2.      Plaintiff and Counterclaim Defendant, JJ Entertainment World, is a Florida corporation with its principal place of business in Miami, Florida.

3.      Defendant and Counterclaim Plaintiff, Davenport, is a citizen of Colorado or a state other than Florida. Davenport is the Chief Executive Officer of VRsenal.

4.      Defendant and Counterclaim Plaintiff, Smith, is a citizen of Colorado or a state other than Florida. Smith is the Chief Financial Officer and Chief Operating Office of VRsenal.

5.      Defendant and Counterclaim Plaintiff, Halsmer, is a citizen of Colorado or a state other than Florida. Halsmer is the Chief Technology Officer of VRsenal.

## JURISDICTION AND VENUE

6.      Other than and but for the mandatory and binding arbitration clause in the Partners Agreement, this Court would have and has diversity jurisdiction over this Counterclaim because the citizenship and residency of the parties is diverse and the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

7.      Other than and but for the mandatory and binding arbitration clause in the Partners Agreement, venue is proper in this Court because JJ resides in this district and division, is located here and filed its original and amended complaints in this district and division.

## FACTS

8.      From at least September 2017 to early February of 2018, JJ and VRsenal were negotiating a $3 million equity investment by JJ in VRsenal.

9.      JJ, through Juan Jose Rendon, made the following false promise and misrepresentation to VRsenal, through the Individual Defendants, in a November 25, 2017 Term Sheet which stated in part that:

11

> JJ will invest a total amount of $3 million in exchange for minimum 20% ownership equity (voting capital stock)…

10.     Beginning in or before September of 2017 and continuing through early February 2018, Juan Jose Rendon of JJ represented to VRsenal, through the Individual Defendants[1], that JJ planned to make the $3 million equity investment and promised that JJ would continue to negotiate in good faith with VRsenal over the terms of that investment.

11.     Beginning in or before September of 2017 and continuing through early February 2018, JJ, through Juan Jose Rendon, made false promises, misrepresentations and false statements, which were false and knowingly made without the intent to perform them on behalf of JJ.

12.     In actual and reasonable reliance on JJ's misrepresentations and false promises, VRsenal and the Individual Defendants executed the Partners Agreement and the first Promissory Note with JJ on or about February 8, 2018.

13.     Nevertheless, JJ never made the promised investment, never terminated the Promissory Note, and never converted the more than $1.1 million debt under the September 18, 2018 Promissory Note into the promised $3 million equity investment.

14.     In the Partners Agreement, JJ promised and represented that it was interested in negotiating the proposed $3 million equity investment in VRsenal. JJ promised and agreed to negotiate in good faith with VRsenal over the proposed equity investment and to negotiate in good faith over any disputes that might arise between the parties.

_____

[1] The "Individual Defendants" means and includes Ben Davenport, Kirk Smith and Gabe Halsmer.

15.     The Partners Agreement referred to a contemporaneous "Bridge Loan" of $250,000.00 that JJ was making to VRsenal in the form of the first Promissory Note. (Partners Agreement, p.2).

16.     This first bridge loan was made in the form of a Promissory Note dated February 8, 2018. This first Promissory Note was induced by JJ through the same false promises and misrepresentations that it used to induce the Partners Agreement.

17.     The Partners Agreement further required (on page 2) that any disputes not settled through good faith negotiations must be resolved through mandatory and binding arbitration pursuant to the rules of the American Arbitration Association.

18.     JJ breached and falsely induced the Partners Agreement and the February 8, 2018 Promissory Note by Juan Jose Rendon falsely promising and representing to VRsenal and the Individual Defendants, without the intent to perform, that JJ planned to make and intended to negotiate in good faith over the terms of the $3 million equity investment and over any disputes that arose between the parties.

19.     JJ made its promises and misrepresentations to VRsenal and the Individual Defendants intending, expecting and knowing that VRsenal would actually and reasonably rely upon them in entering into the Partners Agreement and the February 8, 2018 Promissory Note.

20.     VRsenal and the Individual Defendants actually and reasonably relied upon JJ's false promises and misrepresentations in signing the Partners Agreements and in borrowing and guaranteeing the first $250,000.00 from JJ pursuant to the February 8, 2018 Promissory Note.

21.     VRsenal was injured by and suffered damages from JJ's fraud and false promises made without the intent to perform them and by JJ's breaches of contract in accepting and guaranteeing the first $250,000.00 bridge loan that JJ knew VRsenal would be unable to pay

back in addition to the second and third bridge loans and promissory notes totaling over $1.1 million.

22.    JJ failed to make the promised $3 million equity investment and failed and refused to negotiate in good faith to either make the equity investment or resolve the parties' disputes. Rather, JJ simply had a lawyer inform VRsenal – without any explanation – that JJ had decided not to make the investment. JJ never actually had the funds or access to the funds necessary to make a $3 million equity investment in VRsenal, but JJ intentionally concealed and omitted to disclose that material fact at all relevant times, despite knowing that it was a material fact, upon which VRsenal and the Individual Defendants were relying in signing the Partners Agreement and the Promissory Notes.

23.    On October 22, 2018, Jorge Hernandez Torano of Holland Knight wrote VRsenal an e-mail stating that:

> JJ has reconsidered his continued involvement and investment in VRsenal and has elected to discontinue any further discussions and not close on the stock purchase transaction you have been discussing with him.

No further explanation was provided for JJ arbitrarily pulling the plug on the promised $3 million equity investment in VRsenal.

24.    The Partners Agreement (on page 2) further provides that:

> In any dispute arising out of this Agreement, the prevailing party shall be entitled to an award of attorneys' fees and costs.

25.    VRsenal is entitled to recover its attorneys' fees and costs arising from and relating to JJ breaching and fraudulently inducing the Partners Agreement.

26.     Between February 2018 and September 18, 2018, JJ, through Juan Jose Rendon continued to represent and promise to VRsenal, through the Individual Defendants, that JJ planned to make the $3 million equity investment in VRsenal.

27.     JJ made these false promises and misrepresentations without the intent to perform them and while intending not to perform them.

28.     JJ intended when making these misrepresentations and false promises that VRsenal and the Individual Defendants would rely upon them in signing and guaranteeing the two additional promissory notes, including the May 14, 2018 Promissory Note and the September 18, 2018 Promissory Note for over $1.1 million on which JJ based its original and amended complaints.

29.     VRsenal and the Individual Defendants actually and reasonably relied upon JJ's false promises and misrepresentations in and when executing the two additional Promissory Notes in favor of JJ, which JJ knew that VRsenal and the Individual Defendants could not repay absent the promised $3 million equity investment. These false promises and misrepresentations induced the May 14, 2018 Promissory Note and in the September 18, 2018 Promissory Note for over $1.1 million on which JJ based its original and amended complaints.

30.     VRsenal and the Individual Defendants were injured by JJ's fraud and breaches of contract by being fraudulently induced to borrow or guarantee over $1.1 million which JJ and everyone involved knew that VRsenal and the Individual Defendants could not repay but for and without the promised $3 million equity investment from JJ.

31.     Inside and outside the promissory notes, JJ, through Juan Jose Rendon, promised, represented and agreed to VRsenal through the Individual Defendants that:

The Promissory Note shall be terminated upon the signing of the Shareholder Agreement that JJ Entertainment World and VRsenal are drafting currently <u>with the intent to sign within the next 14 days</u> for the investment of $3,000,000 by JJ Entertainment World into VRsenal. The funds from this Promissory Note shall be applied as part of the $3,000,000 investment from JJ Entertainment World, therefore satisfying VRsenal's obligations of this Promissory Note.

32.     This same language appeared in both the May 14, 2018 Promissory Note and the September 18, 2018 Promissory Note, showing that the parties had agreed on the material legal and contractual terms by May of 2018.

33.     JJ failed to make the promised $3 million equity investment and failed and refused to negotiate in good faith to either make the investment or to resolve the parties' disputes. Rather, JJ simply had a lawyer inform VRsenal – without any explanation – that JJ had decided not to make the investment. Upon information and belief, JJ never actually had the funds or access to the funds necessary to make a $3 million equity investment in VRsenal, but JJ intentionally concealed and omitted to disclose that material fact at all relevant times, despite knowing that it was a material fact, thus affecting the willingness of VRsenal and the Individual Defendants to make and guaranty the Promissory Notes.

34.     JJ never intended to convert the loan debt into an equity investment and never intended to terminate the Promissory Notes.

35.     JJ made these false promises and misrepresentations with the intent to induce VRsenal and the Individual Defendants into executing the Promissory Notes and into borrowing over $1.1 million that JJ and everyone involved knew that VRsenal and the Individual Defendants could not repay absent the promised $3 million equity investment from JJ.

36.     VRsenal and the Individual Defendants were damaged by and suffered from JJ's fraud and breaches of contract in that they did not receive the promised $3 million equity investment but instead were cheated and defrauded into borrowing, guaranteeing and defaulting on more than $1.1 million in loan debt that they could not repay, as part of JJ's plot to take all of VRsenal's assets and business for $1.1 million, rather than obtaining a minority equity stake in VRsenal for $3 million.

## COUNT I – BREACH OF CONTRACT: SEPTEMBER 18, 2018 PROMISSORY NOTE

37.     VRsenal and the Individual Defendants incorporate by reference paragraphs 1 through 36 to this Counterclaim as though fully set forth herein.

38.     VRsenal and the Individual Defendants fully performed their obligations under the September 18, 2018 Promissory Note and satisfied all conditions precedent until they were discharged by JJ's fraud and prior material breaches.

39.     JJ breached the Promissory Note by failing to terminate it and by failing to convert it into a $3 million equity investment as expressly required therein.

40.     VRsenal and the Individual Defendants were injured by JJ's breaches in that they borrowed or guaranteed and are being sued for an alleged $1.1 million debt that they cannot timely repay absent the $3 million equity investment from JJ.

41.     VRsenal and the Individual Defendants are entitled to recover their attorneys' fees pursuant to be attorneys'-fees provision of the September 18, 2018 Promissory Note, which would be unconscionable and lack mutuality of obligation if not made reciprocal.

42.     JJ's breaches of the September 18, 2018 Promissory Note have inflicted upon VRsenal damages exceeding $4.1 million and upon each of the Individual Defendants' damages exceeding $1.1 million.

17

WHEREFORE, Defendants seek and are entitled to compensatory damages for breach of Promissory Note contract in the amount of $4.1 million for VRsenal and $1.1 million each for the Individual Defendants, plus pre-judgment and post-judgment interest, plus attorneys' fees and litigation costs and defenses.

## COUNT II – BREACH OF CONTRACT: PARTNERS AGREEMENT

43.     VRsenal and the Individual Defendants incorporate by reference paragraphs 1 through 36 to this Counterclaim as though fully set forth herein.

44.     VRsenal and the Individual Defendants fully performed their obligations under the Partners Agreement and satisfied all conditions present until they were discharged by JJ's fraud and prior material breaches.

45.     JJ breached the Partners Agreement by failing to negotiate in good faith over the $3 million equity investment and by failing to negotiate in good faith over the parties' disputes.

46.     JJ has provided no valid or truthful reason for not making the promised $3 million equity investment. Therefore, had JJ negotiated in good faith, as required by the Partners Agreement, and by the implied covenant of good faith and for fair dealing, the $3 million equity investment would have been made, the September 18, 2018 Promissory Note would have been terminated, and the debt would have been converted into equity.

47.     VRsenal and the Individual Defendants were injured by and suffered damages from JJ's breaches in that they borrowed or guaranteed and are being sued for an alleged $1.1 million debt that they cannot timely repay absent the promised $3 million equity investment from JJ.

48.     VRsenal and the Individual Defendants are entitled to recover their attorneys' fees, litigation costs and litigation expenses pursuant to the fee-shifting provision on Page 3 of the Partners Agreement.

49.     The damages to VRsenal from JJ's breaches of the Partners Agreement have cost VRsenal damages exceeding $4.1 million and each of the Individual Defendants' damages exceeding $1 million.

WHEREFORE, Defendants seek and are entitled to compensatory damages for breach of the Partners Agreement contract in the amount of $4.1 million for VRsenal and $1.1 million each for the Individual Defendants, plus pre-judgment and post-judgment interest, plus attorneys' fees and litigation costs and defenses.

## COUNT III – FRAUD

50.     VRsenal and the Individual Defendants incorporate by reference paragraphs 1 through 36 to this Counterclaim as though fully set forth herein.

51.     JJ, through Juan Jose Rendon, defrauded VRsenal and the Individual Defendants into signing the Partners Agreement, into taking out the loans made through the Promissory Notes, into borrowing and guaranteeing each of those loans, by falsely promising to make the $3 million equity investment without the intent to perform, by falsely representing JJ's intention and ability to make the $3 million equity investment, by falsely representing JJ's intention to negotiate in good faith, by misrepresenting JJ's ability to finance, and by concealing its material inability to finance, the promised $3 million equity investment.

52.     JJ and Juan Jose Rendon made the foregoing misrepresentations, false promises and material omissions and concealments knowing and intending that VRsenal and the Individual Defendants would rely upon them in signing the Partners Agreement and the three

19

Promissory Notes, and by borrowing and guaranteeing repayment of the more than $1.1 million in bridge loans, in reliance upon getting the promised $3 million equity investment, which JJ and Rendon knew that VRsenal and the Individual Defendants had no way of repaying absent the planned $3 million equity investment.

53. VRsenal and the Individual Defendants actually and reasonably relied on the false promises, misrepresentations and material omissions and concealments made by JJ through Mr. Rendon in singing and entering into the Partners Agreement and the three Promissory Notes and in promising to repay and guaranteeing repayment of the loan amounts.

54. VRsenal suffered actual, compensatory damages of over $4.1 million from JJ's fraud, and each of the Individual Defendants suffered damages in excess of $1.1 million from JJ's fraud.

55. JJ committed its fraud willfully, maliciously, knowingly and intentionally with a reckless disregard for the rights of VRsenal and of the Individual Defendants. JJ schemed and conspired to fraudulently induce the signing and guaranteeing of the Promissory Notes so that JJ could attempt to take VRsenal's entire business and all of its assets for $1.1 million rather than making a $3 million investment to get a minority equity stake in VRsenal.

56. Therefore, VRsenal is entitled to punitive or exemplary damages in the amount of $41 million from JJ, and each of the Individual Defendants is entitled to punitive or exemplary damages in the amount of $1.1 million from JJ.

WHEREFORE, VRsenal seeks and is entitled to an award of $4.1 million in actual or compensatory damages and $41 million in punitive or exemplary damages for fraud. In addition, each of the Individual Defendants seeks and is entitled to an award of $1.1 million in actual or compensatory damages and $11 million in punitive or exemplary damages against JJ for fraud.

## DEMAND FOR ARBITRATION

Defendants hereby demand mandatory and binding arbitration of this dispute and this case under the mandatory arbitration provision in the Dispute Resolution section of the Partners Agreement.

Respectfully Submitted this 6th Day of November, 2019.

By: */s/ Jason Murray*
　　　　　Counsel
Jason Murray
Gunster Law
Brickell World Plaza
600 Brickell Avenue
Suite 3500
Miami, FL 33131
Phone: 305-376-6041
Cell: 305-799-7077
Fax: 305-376-6010
jmurray@gunster.com
*Counsel for Defendants*


By: */s/ Michael C. Whitticar*
　　　　　Counsel
Michael C. Whitticar
NOVA IP Law, PLLC
7420 Heritage Village Plaza
Suite 101
Gainesville, VA 20155
571-386-2980
Fax: 855-295-0740
Email: mikew@novaiplaw.com
*Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th Day of November, 2019, the foregoing Defendants' Answer, Defenses, Counterclaims and Demand for Arbitration in Response to Plaintiff's Amended Complaint was filed with the Court's CM/ECF system and was served on the following counsel of record:

Jesus Cuza
Monica Vila Castro
Holland & Knight LLP
701 Brickell Avenue, Suite 3300
Miami, FL 33131
Tel: (305) 374-8500
Fax: 305-789-7799
Email: Jesus.Cuza@hklaw.com
Email: Monica.Castro@hklaw.com
*Counsel for Plaintiff*
Email: dshapiro@jaspanllp.com
        jbaquet@jaspanllp.com
*Counsel for Plaintiff*


                                                    */s/ Jason Murray*
                                                    Jason Murray


ACTIVE 11377936.1